## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

INTERVET INC.,

     *Plaintiff*,

    v.

MERIAL LIMITED and MERIAL SAS

     *Defendants*.

MERIAL LIMITED and MERIAL SAS

     *Counterclaim Plaintiffs*,

    v.

INTERVET INC.,

     *Counterclaim Defendant*,

MERIAL LIMITED and MERIAL SAS,

     *Third-Party Plaintiffs*,

    v.

INTERVET INTERNATIONAL B.V.,

     *Third-Party Defendant*.

Civil Action No. 1:07-cv-00559 (HHK)

## REPLY MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT INTERVET INTERNATIONAL B.V.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ......................................................................... 1

II.    Merial's Arguments Fail to Establish Jurisdiction Over Intervet International B.V. ......... 2

    A.     Merial Has Not Made a Well-Pled Allegation of Inducement of Infringement
        Sufficient to Establish Specific Jurisdiction ........................................................... 3

    B.   Participation in Related Litigation Does Not Serve as a Basis for Jurisdiction .......... 12

    C.     Intervet International B.V. Does Not Sell or Offer for Sale Any Products in the
        District of Columbia That Would Confer General Jurisdiction ........................... 13

    D.     Intervet International B.V.'s Patents and Trademarks Do Not Subject It to
        Jurisdiction ......................................................................................................... 16

    E.     Contacts with Regulatory Agencies Cannot Serve as the Basis for Jurisdiction in
        the District of Columbia ...................................................................................... 17

    F.     Merial Has Not Established Control as an Independent Basis for Jurisdiction .... 18

III.   Merial's Request for Jurisdictional Discovery Should Be Denied .................................. 21

IV.    Exercise of Jurisdiction Would Violate Due Process and Offend Traditional Notions of
    Fair Play and Substantial Justice .......................................................................... 22

V.     Conclusion ....................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) .......................................... 10

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307 (Fed. Cir. 2007) ..................... 5

*Barcamerica Int'l. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002) .................................. 8

*Bennet Marine, Inc. v. Lenco Marine, Inc.*, No. 04-60326-CIV, 2008 WL 906766 (S.D. Fla. 2008) ...................................................................................................................................... 7

*Beverly Hills Fan v. Royal Sovereign.* 21 F.3d 1558 (Fed. Cir. 1994) .......................................... 6

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998)................................................................ 16

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................. 23, 24

*Burman v. Phoenix Worldwide Indus.*, 437 F.Supp.2d 142 (D.D.C. 2006)................................... 20

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 134350 - 11 (Fed. Cir. 2002) .................................................................................................... 3, 17

*DSU Medical Corp. v. JMS Co., Ltd.* 471 F.3d 1293 (Fed. Cir. 2006)................................. 10, 11

*Energy Transportation Group, Inc. v. William Demant Holding A/S* , No. 05-422, 2008 WL 78748 (D. Del. Jan. 4, 2008)................................................................................... 20, 21

*Envtl. Research Int'l., Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976) .......... 17

*Faro Techs., Inc. v. Cimcore Corp.*, Case No. 6:05-cv-1702-Orl-31JGG, 2006 U.S. Dist. LEXIS 23745 (M.D. Fla. April 27, 2006) ............................................................................ 10, 11

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997).......................... 9

*GTE New Media Servs. Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27 (D.D.C. 1998)................. 4, 15

*GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ..... 15, 16, 20, 22

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................. 23

*Heller v. Nicholas Applegate Capital Mgmt., LLC*, 498 F. Supp. 2d 100 (D.D.C. 2007) ........... 11

*Honeywell v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975) ..................................... 5, 6, 11

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F.Supp.2d 598 (N.D. Iowa 2006)........... 7

*Int'l Mfg. & Eng'g Servs. Co. v. Semiconductor Energy Lab. Co.*, No. 06-1230, 2007 WL 2059768 (D.D.C. July 16, 2007)................................................................................ 17

*Kinetic COncepts, Inc. v. Bluesky Medical Corp.*, No. SA-03-CA-832-RF, 2004 WL 2550586 (W.D.Tex. Sep. 24, 2004) ................................................................................. 7

*Medical Solutions, Inc. v. C Change Surgical LLC*, 468 F. Supp. 2d 130 (D.D.C. 2006) ..... 14, 21

*Nat'l Patent Development Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003 (D.D.C. 1989)... 16

*Oakley v. JOFA AB,* 287 F.Supp.2d 1111 (C.D. Cal 2003)........................................................ 6

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) .................................................. 23

*Power Mfg. Corp. v. Shanghai ELE Mfg. Corp.*, 533 F.Supp.2d 255 (D.R.I. Feb. 5, 2008)......... 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1335 (Fed. Cir. 1998)................ 23

*U.S. v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) .......................................................................... 18

*Viam Corp. v. Vehicle Power Accessories*, 84 F.3d 424 (Fed. Cir. 1996).................................. 15

*Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988)............................................. 9

*Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829 (Fed. Cir. 1999) ......................................... 17

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)............................. 15

## Statutes

35 U.S.C. § 271 ......................................................................................................................... 6

35 U.S.C. § 293 ..................................................................................................................... 2, 17

D.C. Code § 13-423 (2008)........................................................................................................ 13

D.C. Code. § 13-423(a)(4) ..................................................................................................... 4, 22

## Treatises

Robert L. Harmon, *Patents and the Federal Circuit* § 10.3 (8th ed. 2007)................................. 14

Intervet International B.V. respectfully submits this memorandum in reply to Merial's Opposition To Third Party Defendant Intervet International B.V.'s Motion To Dismiss For Lack Of Personal Jurisdiction ("Opposition") (D.I. 27).  Merial's lengthy Opposition is very short on facts but replete with conjecture and misapplied case law.  Merial has not and cannot refute the fact that Intervet International B.V. has nothing to do with the accused product in the U.S. and it has no control over Intervet Inc.'s actions in the U.S.  Accordingly, there is no jurisdiction over Intervet International B.V. and its motion to dismiss should be granted.

## I.    Summary of Argument

For the reasons summarized below addressing the points raised in Merial's Opposition, there is no jurisdiction over Third-Party Defendant Intervet International B.V. and it should be dismissed from the present action:

- Merial does not and cannot refute any of the facts set forth in the Declaration of Mark van Heumen, submitted with Intervet International B.V.'s Motion to Dismiss (D.I. 24, Exhibit A), demonstrating that no jurisdiction over Intervet International B.V. exists.

- The exercise of personal jurisdiction over Intervet International B.V. does not apply because there have been no acts or transactions by Intervet International B.V. in, or directed at, the District of Columbia.

- The exercise of personal jurisdiction over Intervet International B.V. would offend traditional notions of fair play and substantial justice, an important constitutional point that Merial has failed to rebut, particularly with respect to § 13-423(a)(4) of the District of Columbia's long-arm statute.

- No specific jurisdiction exists over Intervet International B.V. based on Merial's bare allegations and conclusory lawyer arguments.

- Intervet Inc.'s use of trademarks owned by Intervet International B.V. without oversight does not constitute a basis for jurisdiction, nor a waiver of the trademark as Intervet International B.V. is familiar with and relies upon Intervet Inc.'s own efforts to control quality.

- There is no basis for specific jurisdiction over Intervet International B.V. based on its voluntary assistance with a separate litigation, surrounding U.S. Patent No. 6,368,601, to which Intervet International B.V. is not a party.

- Intervet International B.V. does not sell or offer for sale the accused porcine circovirus products anywhere in the United States, nor does Merial allege that it does. The accused product for sale in the United States was developed by Intervet Inc., is manufactured in the U.S. by Intervet Inc., and is sold in the U.S. by Intervet Inc.  Intervet International B.V.'s ownership of a website through which no product can be purchased is insufficient to rise to the level of "minimum contacts" with the District.

- Section § 293 of the Patent Statute which confers jurisdiction over a party applies only when the patent-in-suit is owned by the party, as Merial concedes in its brief.  The patent-in-suit in this case is owned by Merial.  The fact that Intervet International B.V. owns other patents is irrelevant.

- Intervet International B.V.'s contacts with federal agencies cannot establish general jurisdiction.

- Intervet International B.V. does not control Intervet Inc., nor is it a holding company for Intervet Inc.  Merial's allegations that Intervet International B.V. controls Intervet Inc. are based on Merial's loose definitions of "Intervet" that can mean Intervet, Inc., Intervet International Inc. or Intervet International B.V., all of which are separate, though affiliated, companies.

- Merial has no factual support for alleging that this Court has jurisdiction, either personal or general, over Intervet International B.V.

For the reasons set forth in its opening memorandum and this reply, Intervet International B.V. respectfully requests that the Court grant its motion in its entirety and dismiss Intervet International B.V. from this action.

## II.    Merial's Arguments Fail to Establish Jurisdiction over Intervet International B.V.

Merial's Opposition may be distilled down to six alleged bases for jurisdiction over Intervet International B.V.: (a) specific jurisdiction based on its alleged inducement of infringement; (b) specific jurisdiction based on its participation in related litigation; (c) general jurisdiction based on its alleged offering of products for sale in the District of Columbia ("District"); (d) general jurisdiction based on its ownership of U.S. patents and trademarks; (e) general jurisdiction based on contacts with regulatory agencies; and (f) general jurisdiction based on alleged control over Plaintiff Intervet Inc.  With respect to the last point, Merial argues that

through Intervet International B.V.'s controlling activities of Plaintiff Intervet Inc., it has induced Intervet Inc. to infringe Merial's patent ("the '594 patent"). Thus, this last point is actually just additional argument offered to support Merial's allegation of inducement of infringement. Each of Merial's bases fails for the reasons set forth below.

### A. Merial Has Not Made a Well-Pled Allegation of Inducement of Infringement Sufficient to Establish Specific Jurisdiction

Federal Circuit law governs the issue of personal jurisdiction in a patent-related case. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1561 n. 4 (Fed. Cir. 1994). To establish specific jurisdiction, the "minimum contacts prong requires the plaintiff to show that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1350 -1351 (Fed. Cir. 2002) (internal quotations omitted).

Here, the injuries that Merial purports to suffer arise from Intervet Inc.'s alleged infringement of U.S. Patent No. 7, 192,594 ("the '594 patent"). Therefore, to establish personal jurisdiction over Intervet International B.V., Merial must show that (i) Intervet International B.V. has purposefully directed infringing activities at residents of the District, and (ii) that Merial's injuries arise out of or relate to those activities. Merial has shown neither.

This Court cannot exercise specific jurisdiction over a party merely because a plaintiff (or third-party plaintiff) has made an allegation of inducing infringement. Merial's own case law supports this point: while a party opposing a motion to dismiss is entitled to the benefit of the doubt, "[that party], however, cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *GTE New Media Servs. Inc. v.*

*Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C. 1998). Otherwise, a party could establish

jurisdiction by simply alleging inducement of infringement.

Merial's third-party complaint against Intervet International B.V. contains nothing more

than "bare allegations" and "conclusory statements:" "Intervet International . . . causes to be

sold"; "[t]his Court has personal jurisdiction over Intervet International by virtue of its

actions . . . which induce . . . infringement"; "Intervet International . . . actively induced the

infringement of claims of the '594 patent by inducing or contributing to the making, using,

selling, and/or offering for of sale [the accused products]." (D.I. 21, ¶¶ 5, 6, 13.) One must look

beyond Merial's pleadings and to its Opposition to the present motion to find the bases for

Merial's allegations, none of which offer any further factual support to the conclusory statements

in its third-party complaint.

In its Opposition, Merial cites "[a] litany of cases" that supposedly support jurisdiction

based on an allegation of inducement of infringement, but the facts in Merial's cited cases are

inapposite to those here. (D.I. 27, at 8-9.) As an initial matter, none of these cases are from the

District of Columbia, and therefore do not reflect this jurisdiction's long-arm statute or this

Court's interpretation of it.

Section 13-423(a)(4) of the District's long-arm statute provides as follows:

> (4) causing tortious injury in the District of Columbia by an act or
> omission outside the District of Columbia if he regularly does or solicits
> business, engages in any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed, or services rendered, in
> the District of Columbia.

D.C. Code § 13-423 (2008). Merial has not shown, nor can it show, any regular or persistent

conduct of Intervet International B.V. in the District, nor has Merial even alleged a derivation of

substantial revenue for such activities. Indeed, "Intervet International B.V. is not licensed to do

business in the District of Columbia or the United States, and does not sell products, transact or

solicit any business in the District of Columbia." (Ex. A,[1] van Heumen Decl. at ¶ 5.) Therefore,

no basis for jurisdiction exists under this section of the District's long arm statute either for

inducement of infringement by events outside the United States or for any other claim.

　　　　To establish active inducement of infringement, Merial must show "first that there has

been direct infringement, and second that the alleged infringer knowingly induced infringement

and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA*

*Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co.*

*v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed.Cir.2002) (citation omitted). Furthermore,

"[s]pecific intent requires a showing that the alleged infringer's actions induced infringing acts

and that he knew or should have known his actions would induce actual infringements." *Id.*

(internal quotations omitted). Moreover, "liability [may] be found only if the inducement is

'active,' in the sense that to be held as a contributory infringer, one must purposefully cause,

urge or encourage another to infringe." *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137,

1142 (7th Cir.1975) .

　　　　The first case Merial cites for active inducement, *Honeywell v. Metz Apparatewerke*,

presents a completely different factual situation from Intervet International B.V.'s. In

*Honeywell*, a distributor sold the defendant's accused product in the U.S. and therefore had been

induced by the defendant to infringe the patent at issue. 509 F.2d at 1139. But here, Intervet Inc.

is not selling Intervet International B.V.'s product in the U.S.; rather, Intervet Inc. is selling its

own product which it developed, manufactures and sells itself in the U.S. (Ex. A, van Heumen

Decl. at ¶¶ 3, 5.) Therefore, Intervet International B.V. cannot have induced any alleged

---

[1]　　　　"Ex. ___" refers to the Declaration of Anne Li, attached.

infringement by Intervet Inc.  Additionally, as stated in *Honeywell*, the inducement must be "active" to qualify as inducement of infringement under 35 U.S.C. § 271(b), *i.e.*, "one must purposefully cause, urge or encourage another to infringe."  *Honeywell* 509 F.2d at 1142.  In *Honeywell*, the court found "active" inducement because the defendant provided the distributor with English instruction booklets, assisted in publicizing the products, retained the right to inspect and obtain information about the distributor's business affairs, agreed to indemnify the distributor for patent infringement claims, and gave the distributor credit against invoices for after-sale repairs performed in the U.S.  *Honeywell,* 509 F.2d at 1142.  In contrast, Intervet International B.V. does not conduct any such activities and does not have control over the day-to-day activities of Intervet Inc.  (*See* Ex. A, van Heumen Decl. at ¶ 7.)  Therefore, Intervet International B.V. cannot be said to be "actively" inducing Intervet Inc. to infringe the '594 patent.

The other case Merial cites, *Beverly Hills Fan v. Royal Sovereign*, is also inapposite because, like in *Honeywell*, the defendant was the entity selling the accused product in the U.S. Here, however, Intervet Inc. is selling its own product, not Intervet International B.V.'s product. *Beverly Hills Fan*, 21 F.3d at 1563.  In this case, the only accused product found in the U.S. is manufactured exclusively by Intervet Inc., not Intervet International B.V.  (Ex. A, van Heumen Decl. at ¶¶ 3 and 5.)

Merial also cited *Oakley v. JOFA AB,* 287 F.Supp.2d 1111, 1115 (C.D. Cal 2003), in which the defendant, and not the subsidiary, designed and developed the infringing product. Here, Intervet Inc., a company that is not a subsidiary of Intervet International B.V., designed, developed and manufactured the accused product sold in the U.S.

Merial also cites *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F.Supp.2d 598, 614 (N.D. Iowa 2006), for the proposition that an act of infringement or inducement of infringement that "involves the defendant's own actions and directing or encouraging infringement by another in a particular forum it follows that the inducer has directed his activities at the forum just as certainly as the infringer has." (D.I. 27, at 8-9). However, in *Ideal*, the foreign corporation set up a distribution network and directed the marketing of the infringing product through the distributor. Intervet International B.V. has done no such thing. Intervet Inc. distributes and markets the accused product it manufactures in the U.S. Intervet International B.V. does not control the day-to-day operations of Intervet Inc. (Ex. A, van Heumen Decl. at ¶ 7.)

Merial also cites *Bennet Marine, Inc. v. Lenco Marine, Inc.*, No. 04-60326-CIV, 2008 WL 906766 (S.D. Fla. 2008) among its "litany of cases." However, this case, like the many others Merial cited in its brief, is interpreting a *different* long arm statute than the one at issue here. Also, the defendant in *Bennet* was allegedly "personally responsible for [the direct infringer's] decision to continue [infringing]." *Id.* at *4. As stated repeatedly, Intervet International B.V. holds no sway over the actions of Intervet Inc. (Ex. A, van Heumen Decl. at ¶ 7.)

The remaining two cases that Merial cites, *Kinetic COncepts, Inc. v. Bluesky Medical Corp.*, No. SA-03-CA-832-RF, 2004 WL 2550586 (W.D.Tex. Sep. 24, 2004) and *Power Mfg. Corp. v. Shanghai ELE Mfg. Corp.*, 533 F.Supp.2d 255 (D.R.I. Feb. 5, 2008) are not only interpreting other long arm jurisdiction statutes, but are factually very different from the present case. In both of these cases, the alleged "inducer" manufactured the accused product that was sold into the stream of commerce and targeted for the U.S. market. Here, Intervet International

B.V. does not manufacture the accused product for sale in the United States.  The allegedly infringing product is made by Intervet Inc. in the United States and is sold here.  (*See* Ex. B).

Merial next claims that Intervet International B.V. owns trademarks related to the accused product.  (D.I. 27, at 9-10.)  Based on this ownership, Merial asserts, without factual support, that Intervet International B.V. induces infringement of the '594 patent because Intervet International B.V. must exert quality control over products sold by its trademark licensees in order for Intervet International B.V. to retain its trademark protection.  (*Id.*)

Merial cites *Barcamerica Int'l. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002), for the proposition that if Intervet International B.V. owns the trademarks, it must license them to Intervet Inc., and in order to maintain its rights in a trademark, it must exercise control over Intervet Inc.  This is patently false.  First, this case does not stand for the proposition that ownership of a trademark used by a licensee is sufficient to establish jurisdiction or inducement of infringement.  Second, as *Barcamerica* itself states "courts have upheld licensing agreements where the licensor is familiar with and relies upon the licensee's own efforts to control quality." *Id.* at 596 (internal quotations omitted).  Indeed, while Intervet International B.V. and Intervet Inc. are separate companies, they are affiliated.  As such, Intervet International B.V. relies upon the quality control and manufacturing standards established by Intervet Inc. to ensure that products sold under its trademark are of the highest quality.  Merial's assertion that Intervet International B.V. needs to oversee Intervet Inc.'s production of the accused product defies logic, because the product was developed by Intervet Inc. in the United States for use in the United States.  While Intervet Inc. and Intervet International B.V. have a long history of doing business together on other vaccine products, they do not share responsibilities with respect to Circumvent PCV®.  (*See, e.g.,* Ex. B).

Merial cites another case, *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988), that has nothing to do with the facts in the present case. In *Water Techs.,* the defendant who induced its trademark licensee to infringe the patent-in-suit gave the product formulas to its licensee, prepared consumer use instructions, and actually helped its licensee make the infringing product. Intervet International B.V. has not participated in the manufacture of the accused product and has not engaged in any such activities that would induce patent infringement. (*See* Ex. A, van Heumen Dec. at ¶¶ 3 and 5.)

Merial also incorrectly cites *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459 (Fed. Cir. 1997). There, the court did not base jurisdiction on the authorization of the use of a foreign corporation's trademarks, as Merial states. (D.I. 27, at 10.) Rather, the foreign corporation had its own patented product, which it sold in the forum through a contract with a distributor. *Genetic Implant,* 123 F.3d at 1458. The court based jurisdiction on the contract for the sale of the foreign corporation's products in the forum, along with its establishment of teaching centers in the forum. *Id*. Intervet International B.V. does not sell the accused product in the District of Columbia, nor has it established any teaching centers in the District – in other words, Intervet International B.V. has no contacts with the District of Columbia. (*See* Ex. A, van Heumen Decl. at ¶ 5).

Merial also cites *Benjamin Obdyke Inc. v. Owens Corning*, for the proposition that a trademark owner could be held liable for inducing infringement. This case, however, actually supports Intervet International B.V.'s motion to dismiss. In *Benjamin Obdyke*, a defendant, Liberty Diversified Industries ("Liberty"), owned a trademark used on the allegedly infringing products, which were sold by its subsidiary and allegedly placed into the "stream of commerce." *Id.* at *2. Liberty acted as the holding company for the intellectual property of its subsidiary's

9

products and provided "administrative and legal support." *Id.* at *3.  However, Liberty did not

conduct business or own property in the forum, or market, sell, or offer for sale any products.  *Id.*

at *3.  The court dismissed Liberty from the suit for lack of personal jurisdiction because the

plaintiff had failed to demonstrate the requisite minimum contacts with the forum.  *Id.* at *3.

    In sum, the only evidence Merial has offered in support of its inducement allegation is

that Intervet International B.V. has registered a trademark for the accused product, but Merial

fails to establish that Intervet International B.V. has done anything more which would qualify as

active inducement of patent infringement.  Importantly, Merial points to no case law that

supports its argument that the mere holding of a trademark constitutes inducement of patent

infringement or establishes minimum contacts for the purposes of establishing jurisdiction.

    Finally, Merial argues that Intervet International B.V. has induced infringement because

it has acted in concert with Intervet Inc. to promote the sale of the accused product, as shown by

content on websites <www.intervet.com> and <www.intervetusa.com> owned by Intervet

International B.V., as well as in other public sources.  (D.I. 27, at 10-11.)  However, owning a

website with information about an accused product does not qualify as "active" inducement of

infringement.  *See DSU Medical Corp. v. JMS Co., Ltd.*  471 F.3d 1293, 1306 (Fed. Cir. 2006);

*3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) ("Although [foreign

parent corporation] maintained a World-Wide-Web site viewable in California, any e-mail

responses to that site were forwarded to [local subsidiary].  On its own, [foreign parent

corporation] directed no activity toward the residents of California."); *Faro Techs., Inc. v.

Cimcore Corp.*, Case No. 6:05-cv-1702-Orl-31JGG, 2006 U.S. Dist. LEXIS 23745 at *8-12

(M.D. Fla. April 27, 2006) (dismissing parent company for lack of jurisdiction, where

subsidiaries' websites advertised accused product but did not make it available for purchase;

jurisdiction would violate Due Process because of no activities purposefully directed at forum and no showing that infringing sales occurred as a result).  Merial has simply cherry-picked several websites and documents which evidence not active inducement or even control, but rather that Intervet International B.V. and Intervet Inc. are affiliated corporations.  (D.I. 27, at 10-11, 21-26.)  However, mere affiliation is not sufficient evidence of inducing patent infringement.  Merial's own cases show that the inducement must be "active."  *Honeywell,* 509 F.2d at 1142.  Moreover, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Medical Corp.*, 471 F.3d at 1306.  Furthermore, this Court has held that "[o]rdinarily, a corporation's contacts with a forum may not be attributed to affiliated corporations," so that Intervet Inc.'s actions may not be attributable to Intervet International B.V. *Heller v. Nicholas Applegate Capital Mgmt., LLC*, 498 F. Supp. 2d 100, 112 (D.D.C. 2007).

Specifically, Merial alleges that Intervet International B.V.'s websites advertise the accused product and allow persons to request information about it.  (D.I. 27, at 10-11.)  Merial also alleges that Intervet International B.V.'s website refers to "our customers in the United States."  (*Id.*)  However, Merial's exhibits only show that Intervet International B.V. has registered the websites <www.intervet.com> and <www.intervetusa.com>, and do not show that Intervet International B.V. controls the content.[2]  (*See* Haynes Decl. Exhs. 2(a) and 2(b).)  Furthermore, <www.intervet.com> and <www.intervetusa.com> do not advertise or promote the sale of the accused product, but simply provide information about it.  (Exs. D & E;[3] s*ee Faro*

---

[2]    In fact, Merial fails to mention that www.circumventpcv.com is registered by the advertising firm Osborn Barr.  (Ex. C).

[3]    These websites only show the product label information and provide a contact phone number to request more information on the product.  Intervetusa.com gives a US telephone number with Eastern Standard Time business hours.  (Ex. F).  Furthermore, the intervet.com site asks one to select one's country when looking for product information, after which one is redirected via a new webpage to intervetusa.com.

*Techs.*, 2006 U.S. Dist. LEXIS at *8-12 (dismissing parent company for lack of jurisdiction, where subsidiaries' websites even advertised accused product but did not make it available for purchase)).  Intervet International B.V., therefore, cannot be said to be actively inducing infringement by virtue of the content of its registered websites.  Moreover, the fact that persons can use the websites to request information about the product says nothing about whether Intervet International B.V. controls the activities of Intervet Inc.  In short, Merial has failed to provide any facts that support its allegation that Intervet International B.V. has induced infringement of the '594 patent.

### B.      Participation in Related Litigation Does Not Serve as a Basis for Jurisdiction

Merial argues that the alleged participation of representatives of Intervet International B.V. in a related litigation in this Court allows this Court to exercise specific jurisdiction over it. Again, Merial fails to cite any case law in support of its argument.  (D.I. 27, at 12.)  However, Intervet International B.V. has not "participated" in the related litigation.  Notably, in the related litigation, Intervet International B.V. is not a party, nor has Merial even attempted to make them one, even though the related litigation involves the identical accused product, belying Merial's assertions that Intervet International B.V. is an essential party to *this* action.  While it is true that one employee of Intervet International B.V. sat at counsel's table during a portion of a hearing in which Intervet Inc. participated, she acted as a representative of and technical advisor for Intervet Inc., solely for that hearing.  Intervet International B.V. did not appear at or participate in the related litigation.[4]

Merial also argues that attendance of Intervet International B.V. lawyers at a meeting in the office of Intervet Inc.'s counsel in Washington, D.C. regarding the related litigation

---

[4]      Just so the record is clear, the representative Marieke van Gent is extremely knowledgeable about veterinary products and was there to address technical questions from Intervet's counsel during the proceeding.

constitutes "contacts" in the District that form a basis for jurisdiction. (D.I. 27, at 12.) However, no section of the D.C. long-arm statute provides that assistance with related litigation, let alone attendance at one meeting with an expert, is a basis for jurisdiction. D.C. Code § 13-423 (2008). Notably, Merial cannot cite a single case in this jurisdiction or anywhere that has used this as a basis for jurisdiction.

Finally, Merial argues that the naming of individuals at Intervet International B.V. as document custodians and persons with knowledge constitutes "direct involvement" in the related litigation, thereby conferring jurisdiction. However, the fact that a person at Intervet International B.V. has documents or information concerning the subject matter of a related litigation does not mean that Intervet International B.V. has any contacts with the forum—it merely means that a person happens to have relevant documents or information. Merial does not allege that the mere possession of documents or information confers jurisdiction because it has no legal support for such an allegation.

**C.     Intervet International B.V. Does Not Sell or Offer for Sale Any Products in the District of Columbia That Would Confer General Jurisdiction**

Intervet International B.V. "does not sell products, transact or solicit any business in the District of Columbia." (Ex. A, van Heumen Decl. at ¶ 5.) In fact, Merial does not even allege any specific acts or transactions by Intervet International B.V. in, or directed at, the District. Merial only alleges that "International acts in concert with Intervet Inc. to offer [products] for sale." (D.I. 27, at 14.) However, Intervet International B.V. does not transact any business in the District nor does it have any involvement in the advertising of the accused product.

Merial argues that Intervet International B.V. "launch[ed] a new family of vaccines at a convention in Washington, D.C." (D.I. 27, at 14.) In a patent infringement case, this Court stated that "mere demonstration or display of an accused product, even in an obviously

13

commercial atmosphere, does not constitute an infringing use under § 271(a)." *Medical Solutions, Inc. v. C Change Surgical LLC*, 468 F. Supp. 2d 130, 134 (D.D.C. 2006) (internal quotes omitted). This Court went on to hold that the defendant's participation in a trade show did not constitute or include an offer to sell, and therefore dismissed the defendant for lack of personal jurisdiction. *Id.* at 135. This Court should similarly disregard Intervet International B.V.'s announcement of a new, unrelated product at a convention.

Merial also alleges that Intervet International B.V. places products into the stream of commerce through established distribution channels. (D.I. 27, at 15.) The Federal Circuit has not yet ruled on "whether additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." Robert L. Harmon, *Patents and the Federal Circuit* § 10.3 (8th ed. 2007). However, even under the less stringent test, this Court does not have jurisdiction over Intervet International B.V. under the stream of commerce theory because Intervet International B.V. does not manufacture the accused project, inject it into the stream of commerce, nor do so through established distribution channels.

What Merial misses in its stream of commerce argument is that Intervet International B.V. does not place the accused product into the stream of commerce using Intervet Inc. as an "established distribution channel." To the contrary, it is Intervet Inc. itself that is placing its own product into the stream of commerce. Intervet Inc. manufactures, advertises, and sells the accused product, with no involvement from Intervet International B.V.

Merial also argues that this District has jurisdiction over Intervet International B.V. because it injects other products, unrelated to this lawsuit, into the stream of commerce by acting in concert with Intervet Inc. and other distribution channels. (D.I. 27, at 14-15.) However, a

court does not have jurisdiction over a company just because the company injects a product into the stream of commerce—the company must inject the product out of which the cause of action arises in order to be subject to jurisdiction. *See Viam Corp. v. Vehicle Power Accessories,* 84 F.3d 424, 428 (Fed. Cir. 1996) (personal jurisdiction is assessed by determining "whether the patent holder purposefully directed his activities at residents of the forum and, if so, whether the litigation results from alleged injuries that ***arise out of or relate to those activities***.") (emphasis added) (internal quotations omitted). As discussed throughout this brief, Intervet International B.V. has nothing to do with the accused product anywhere in the U.S.

Merial also alleges that general jurisdiction exists over Intervet International B.V. because it markets its products over the internet. (D.I. 27, at 16.) As discussed above, those websites registered to Intervet International B.V. provide information, not promotional material or offers for sale. Neither Intervet International B.V. nor Intervet Inc. sells products over its websites. With respect to the accused product, Intervet International B.V. has no involvement at all in advertising and selling.

Merial's "leading internet personal jurisdiction case," *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, presents significantly different facts from this case. 952 F.Supp. 1119 (W.D. Pa. 1997). In *Zippo*, the defendant not only operated a website, but it also contracted to supply internet services to 3,000 residents of the forum and entered contracts with seven internet providers in the forum. *Id.* at 1122. Intervet International B.V., on the other hand, does not contract with residents of the District to use the websites registered to it.

Merial also cites *GTE New Media Servs. Inc. v. Ameritech Corp.*, but does not mention that the case was certified for interlocutory appeal. *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) On appeal, the D.C. Circuit found basis in the record for

the district court's finding of jurisdiction and remanded the case for jurisdictional discovery.  (*Id.* at 1351).  The court found that there was no indication that website users could transact business with the defendants through the website, and mere access to a website is insufficient to establish jurisdiction because this does not "show any persistent course of conduct by the defendants in the District."  (*Id.* at 1350).  Thus, contrary to Merial's argument, the D.C. Circuit rejected the reasoning that a "highly interactive" website that was "significantly commercial in both quality and nature" could constitute a persistent course of conduct by the defendants.  (*Id.* at 1349).  The website owned by Intervet International B.V. would not constitute "highly interactive" in any case.

Finally, Merial cites *Blumenthal v. Drudge*, which also does not apply.  *Blumenthal v. Drudge* ,992 F. Supp. 44 (D.D.C. 1998).  In *Blumenthal*, this Court found that the defendant's website specifically targeted residents of the District of Columbia because of its political content.  (*Id.* at 56-57.)  Intervet International B.V. does not specifically target District residents in any way—the content relates to information about veterinary products.

### D.     Intervet International B.V.'s Patents and Trademarks Do Not Subject It to Jurisdiction

Merial argues that because Intervet International B.V. holds patents and trademarks in the United States, Intervet International B.V. should be subject to general jurisdiction in U.S. courts because it has "availed itself of the protection and benefits afforded by the patent laws of the country."  (D.I. 27, at 19.)  A patent or a trademark, however, cannot confer jurisdiction because, under Merial's reasoning, any defendant who holds a patent or trademark would be subject to jurisdiction in any forum in the United States and that is simply not what 35 U.S.C. § 293 states with respect to patents.  The cases Merial cites, *National Patent Development Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003 (D.D.C. 1989), *Deprenyl Animal Health, Inc. v. University of*

*Toronto Innovations Foundation*, 297 F.3d 1343 (Fed. Cir. 2002), and *Int'l Mfg. & Eng'g Servs.*

*Co. v. Semiconductor Energy Lab. Co.*, No. 06-1230, 2007 WL 2059768 (D.D.C. July 16, 2007),

invoke 35 U.S.C. § 293, which confers jurisdiction in the District of Columbia over patentees

residing outside the United States, that is, there is jurisdiction in the District over the owner of

the patent-in-suit.  Intervet International B.V. is not the patent owner in this case, and Merial

even concedes that § 293 does not apply.  (D.I. 27, at 19.)  Merial cites to no case in support of

its assertion that the mere ownership of trademarks by a party would subject that party to

jurisdiction in a forum in the United States.  The fact that Intervet International B.V. owns other

patents is irrelevant because § 293 only confers jurisdiction based on the patent-in-suit.

### E.    Contacts with Regulatory Agencies Cannot Serve as the Basis for Jurisdiction in the District of Columbia

Merial attempts to invoke jurisdiction because of Intervet International B.V.'s contacts

with regulatory agencies in the District and elsewhere in the U.S.  (D.I. 27, at 20.)  However, the

"government contacts exception" states that "entry into the District of Columbia by nonresidents

for the purpose of contacting federal government agencies is not a basis for the assertion of in

personam jurisdiction."  *Envtl. Research Int'l., Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d

808, 813 (D.C. 1976).  The reason for the exception, which is grounded in the District's "unique

character…as the seat of national government," is that subjecting a non-resident to jurisdiction

for "dealing with a federal instrumentality not only would pose a threat to free public

participation in government, but also would threaten to convert the District of Columbia into a

national judicial forum."  *Id.*; *see also Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 832

(Fed. Cir. 1999) (applying the government contacts exception to hold that filing an Abbreviated

New Drug Application with the FDA in Maryland did not confer jurisdiction in Maryland); *U.S.*

*v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (stating that the government contacts exception would prevent using a communication with the Justice Department as a basis for jurisdiction).

Nevertheless, Intervet International B.V.'s contacts with regulatory agencies have not concerned the accused product. Even the specific examples of Intervet International B.V. contacts that Merial provides do not relate to the accused product. (D.I. 27, at 20.) Furthermore, one of Merial's examples of agency contacts does not even qualify as a contact with the District of Columbia because it involved a meeting which took place in Maryland. (D.I. 27, at 20.) Thus, such regulatory contacts provide far too attenuated a contact with the District of Columbia to warrant exercise of jurisdiction.

### F.    Merial Has Not Established Control as an Independent Basis for Jurisdiction

Intervet International B.V. does not control Intervet Inc., nor is it simply a holding company for Intervet Inc. (*See* Ex. A, van Heumen Decl. at ¶ 7.) Merial's allegations that Intervet International B.V. controls Intervet Inc. are based on Merial's loose definitions of "Intervet." Intervet Inc., Intervet International B.V., and Intervet International Inc. are separate, though affiliated, companies. Merial conflates these separate companies throughout its Opposition.

For example, Merial argues that the appointment of Paul Casady as Area Director, Americas, is evidence that "International is acting in concert with, if not directing, Intervet Inc." (D.I. 27, at 26-27.) Mr. Casady's former employer, however, was Intervet International Inc., not Intervet International B.V. Importantly, he is currently employed by Intervet Inc., not Intervet International B.V. Casady's appointment is therefore irrelevant to the inquiry of whether Intervet International B.V. controls Intervet Inc. In fact, many of the documents Merial cites to support its allegation of control do not refer to Intervet International B.V., as Merial states or implies, but rather Intervet International Inc., and therefore do not support Merial's argument.

18

Merial also does not refute the facts set forth in Mr. van Heumen's declaration in support of Intervet International B.V.'s Motion to Dismiss.  (Ex. A, van Heumen decl.)  For example, Merial does not refute that Intervet International B.V. and Intervet Inc. have their own separate officers and duly elected board members.  (Ex. A, van Heumen Decl. at ¶ 7.)  They maintain separate records, including, without limitation, by-laws, minutes, and financial and accounting books and records.  (*Id*.)  They have separate financial audits, maintain separate bank accounts, file their own tax returns, and have separate payrolls.  (*Id*.)  Intervet International B.V. does not control the day-to-day operational decisions of Intervet Inc.  (*Id*.)  Intervet International B.V. and Intervet Inc. enter into and perform their own contracts.  (*Id*.)  Merial does not refute any of these facts, which show that Intervet International B.V. does not control Intervet Inc.

Moreover, the websites and public documents that Merial offers as evidence of control, in fact, only show that Intervet International B.V. and Intervet Inc. are affiliated companies.  They do not evidence control.  For example, Merial emphasizes and quotes certain phrases: "maintains a global distribution network of subsidiary companies" (D.I. 27, at 21); "part of an international company" (*id.*); "U.S. operating division" (*id.*); "US headquarters" (*id.* at 22); "international headquarters in Boxmeer, The Netherlands" (*id.*); "global distribution network" (*id.*); etc.  Such phrases say nothing about the presence or level of control, but rather indicate that a U.S. company, Intervet Inc., is affiliated with a global company, Intervet International B.V.  A mere affiliate relationship is not enough to confer jurisdiction through an agency theory or an active inducement of infringement theory.

Merial also points to instances in which the companies refer to themselves as "we," and their products as "our products."  (*Id*. at 23-25.)  Such language also does not indicate control, but rather is the type of language any related companies would use, even while each maintains its

own independence.  Furthermore, Merial cites to articles or statements made by third parties, which are not attributable to Intervet International B.V. and indeed, are inaccurate.  (*Id*. at 22; *see* Haynes Dec. Exh. 29.)

Merial also cites a press release announcing the appointment of an Executive Team for the Intervet/Schering-Plough Animal Health Unit, which included appointments of various Global Vice Presidents.  (D.I. 27, at 27 and Haynes Decl. Exhs. 3(s) and 3(t)).  However, Schering-Plough made the appointments, not Intervet International Inc., as Merial claims. Therefore, the existence of the Executive Team is not evidence of any control over Intervet Inc.

Merial relies on *Energy Transportation Group, Inc. v. William Demant Holding A/S* for "guidance" in this case.  No. 05-422, 2008 WL 78748 (D. Del. Jan. 4, 2008).  (D.I. 27, at 28-29.) However, this guidance is misplaced.  *Energy Transportation Group* was a Delaware case that applied the Delaware long-arm statute, which is interpreted to confer jurisdiction "to the maximum extent possible so as to provide residents a means of redress against those not subject to personal service within the state."  2008 WL 78748,  at *2.  The D.C. long-arm statute, on the other hand, is more restrictive; in particular, the provision granting jurisdiction as to claims of tortious injury in the District by an act or omission outside the District does "not occupy all of the constitutionally available space."  *GTE New Media Servs. Inc.*, 199 F.3d at 1347; *see also Burman v. Phoenix Worldwide Indus.*, 437 F.Supp.2d 142, 152 (D.D.C. 2006) (holding that a similar provision of the D.C. long arm statute §13-423(a)(3) "stops short of the outer limits of due process and requires that both act and injury occur in the District of Columbia.) (internal quotations omitted).  Thus, the D.C. long-arm statute is narrower than that of Delaware. Furthermore, the contacts in *Energy Transportation Group* were extensive, as opposed to the lack of contacts in the present action.  In *Energy Transportation Group*, the subsidiary

company's website directs users to providers located in the forum that are "currently active…distributors trained in fitting [the subsidiary's] products." 2008 WL 78748, at *4, n.1. Therefore, the parent company "knew that the accused products foreseeably would be sold in the United States and Delaware." *Id*. at *4. The websites of Intervet Inc. and Intervet International B.V., on the other hand, do not direct users to distributors located in the District. Intervet Inc. is not and cannot be considered part of an established distribution channel of Intervet International B.V., like the subsidiary in *Energy Transportation Group*. Finally, the Delaware court found *specific* jurisdiction based on an injection of the accused product into the stream of commerce. *Id*. at *2-3. To the extent that Merial argues for specific jurisdiction because Intervet International B.V. is allegedly injecting the accused product into the stream of commerce, that argument fails as well—Intervet International B.V. "does not manufacture, sell or distribute any product related to this lawsuit in the United States." (Ex. A, van Heumen Decl. at ¶ 3.)

## III.    Merial's Request for Jurisdictional Discovery Should Be Denied

Merial requests jurisdictional discovery, including an alteration of the Protective Order in the related litigation, if necessary. (D.I. 27, at 9, n.9, 30-31.) However, a party seeking this type of discovery must "make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce. *Medical Solutions,* 468 F. Supp. 2d at 135 (internal quotes omitted). Furthermore, "[w]here there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it [is] inappropriate to subject [defendants] to the burden and expense of discovery." *Id*. (internal quotes omitted). In its Opposition, Merial has not made any showing of how jurisdictional discovery would help bring anything new to light.

In fact, Merial has already taken very extensive discovery in the related patent case, from both Intervet Inc. and Intervet International B.V. The discovery included the production of over 150,000 pages of documents by these entities, and numerous depositions. Now, Merial makes a general request for a witness and documents relating to "International's activities in this district, its relationship with Intervet Inc., and its activities with respect to the development, manufacture, use, selling and offering to sell [the accused product] (including any licenses to sell the infringing vaccine in the District of Columbia)." (D.I. 27, at 30.) Merial makes no indication of what it hopes to accomplish by burdening Intervet International B.V. with this generic and extensive discovery request, particularly in light of the extensive discovery Merial has already conducted. Therefore, this Court should deny Merial's request.

## IV.    Exercise of Jurisdiction Would Violate Due Process and Offend Traditional Notions of Fair Play and Substantial Justice

In its Opposition, Merial does not address Intervet International B.V.'s argument that assuming, *arguendo*, Merial's allegations could pass muster under the District of Columbia's long-arm or general jurisdiction statute, an exercise of jurisdiction would violate due process. (D.I. 24, Br. at 11.) Merial instead argues that "the jurisdictional reach of this district's long arm statute is co-extensive with that of Constitutional due process." (D.I. 27, at 5 (internal quotes omitted).) Merial is mistaken (and misquotes Intervet International B.V.'s brief, which only stated that the *general* jurisdiction statute is co-extensive with that of Constitutional due process). (*See* D.I. 24, Br. at 11.) As noted above, § 13-423(a)(4) of the District's long-arm statute, regarding tortious injury, is more restrictive than what the Constitution allows. *GTE New Media Servs. Inc.*, 199 F.3d at 1347. Therefore, one may not "coalesce" the two inquiries (statutory and Constitutional) into one, as Merial attempts to do. (D.I. 27, at 5.)

As explained in Intervet International B.V.'s Motion to Dismiss (D.I. 24), Merial cannot demonstrate specific jurisdiction over Intervet International B.V. under the Due Process Clause, particularly with respect to specific jurisdiction arising out of tortious injury caused by acts or omissions committed outside the District.  Merial does not and cannot allege any act or transaction by Intervet International B.V. in, or directed at, the District.  It does not conduct any business in the District, and it does not manufacture, sell, or distribute any product related to this lawsuit in the District.  It has done nothing to avail itself of the privilege of conducting activities in the District, or to invoke the protection or benefit of District laws.  In short, Merial has not alleged that its claims arise out of or have a substantial connection with any activity by Intervet International B.V. in the District or that Intervet International B.V. has "purposefully directed" any activities at residents of the District.  *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *accord Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1335, 1359 (Fed. Cir. 1998).  .

Nor can Merial demonstrate general jurisdiction under the Due Process Clause.  Only if a nonresident defendant's activities in the forum state are "continuous and systematic" is there a constitutionally sufficient basis to warrant jurisdiction over all causes of action asserted against it.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 421 (1984); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).  Intervet International B.V. does not and has not transacted business in the District, so no general jurisdiction can exist without violating due process.

Finally, Merial does not respond to Intervet International B.V.'s argument that jurisdiction over it would offend traditional notions of fair play and substantial justice.  *Burger King* requires a balancing of the burden on the defendant in having to defend itself in the forum

state, the interests of the forum state in resolving controversies flowing from in-state events, and

the plaintiff's interest in a convenient forum.  471 U.S. at 477.  The balancing analysis required

under *Burger King* weighs heavily against exercising personal jurisdiction over Intervet

International B.V. The burden on Intervet International B.V. would be significant because its

witnesses and documents are located in The Netherlands, and Intervet Inc. could provide any

potentially relevant documents or witnesses in this action as it has done in the related litigation.

Dismissing Intervet International B.V. from this action will not prejudice, burden, or harm

Merial in any manner.  Furthermore, the District has no interest in resolving this controversy

with respect to Intervet International B.V.  As stated above, Intervet International B.V. is

organized and exists in The Netherlands, and it transacts no business in the District.  It does not

engage in any of the activities required to prove patent infringement.


**V.     Conclusion**

For the reasons set forth in this reply and in Intervet International B.V.'s Memorandum in

Support of Its Motion to Dismiss for Lack of Personal Jurisdiction, Intervet International B.V.

respectfully requests this Court to grant its motion to dismiss Intervet International B.V. from the

present action.


Date: July 24, 2008                              Respectfully Submitted,


                                 _____
                                     /s/  Patrice Jean
                                 Patrice P. Jean, Ph.D. (DC Bar No. 482968)
                                 Richard L. DeLucia
                                 Michael D. Loughnane
                                 KENYON & KENYON LLP
                                 One Broadway
                                 New York, NY 10004

John R. Hutchins (DC Bar No. 456749)
William G. James, II (DC Bar No. 503162)
Yariv Waks (DC Bar No. 491729)
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, DC 20005-1257


*Counsel for Intervet International B.V.*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:07-cv-00559 (HHK) |
| MERIAL LIMITED and MERIAL SAS | |
| *Defendants*. | |
| MERIAL LIMITED and MERIAL SAS | |
| *Counterclaim Plaintiffs*, | |
| v. | |
| INTERVET INC., | |
| *Counterclaim Defendant*, | |
| MERIAL LIMITED and MERIAL SAS, | |
| *Third-Party Plaintiffs*, | |
| v. | |
| INTERVET INTERNATIONAL B.V., | |
| *Third-Party Defendant*. | |

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July, 2008, I electronically filed the *Reply Memorandum in Support of Third-Party Defendant Intervet International B.V.'s Motion to Dismiss for Lack of Personal Jurisdiction*, and the *Declaration of Anne Elise Herold Li in*

*Support of Intervet International B.V.'s Reply Memorandum in Support of Third-Party*

*Defendant Intervet International B.V.'s Motion to Dismiss for Lack of Personal Jurisdiction,* and

the exhibits cited therein with the Clerk of the Court in the CM/ECF system which will

automatically email notice of this filing to the following attorneys of record:

> Judy Jarecki-Black, Ph.D.
> MERIAL LIMITED
> 3239 Satellite Blvd.
> Duluth, GA 30096-4640
> Tel: (678) 638-3805
> Fax: (678) 638-3350
>
> Thomas J. Kowalski, Esq.
> Vicki Franks, Esq.
> FROMMER LAWRENCE & HAUG LLP
> 745 Fifth Avenue, NY NY 10151
> Tel: (212) 588-0800
> Fax: (212) 588-0500
>
> Timothy A. Ngau, Esq.
> ALSTON & BIRD LLP
> 950 F. Street, NW
> Washington, DC 20004
> Tel: (202) 756-3300
> Fax: (202) 756-3333
>
> Patrick J. Elsevier, Ph.D.
> Frank G. Smith III, Esq.
> Kristen L. Melton, Esq.
> Elizabeth Haynes, Esq.
> ALSTON & BIRD LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, GA 30309-3424
> Tel: (404) 881-7000
> Fax: (404) 881-7777

*Peter Benson*

Peter Benson
Litigation Paralegal
Kenyon & Kenyon LLP

1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:07-cv-00559 (HHK) |
| MERIAL LIMITED and MERIAL SAS | |
| *Defendants*. | |
| MERIAL LIMITED and MERIAL SAS | |
| *Counterclaim Plaintiffs*, | |
| v. | |
| INTERVET INC., | |
| *Counterclaim Defendant*, | |
| MERIAL LIMITED and MERIAL SAS, | |
| *Third-Party Plaintiffs*, | |
| v. | |
| INTERVET INTERNATIONAL B.V., | |
| *Third-Party Defendant*. | |

<u>**DECLARATION OF ANNE ELISE HEROLD LI IN SUPPORT OF INTERVET
INTERNATIONAL B.V.'S REPLY MEMORANDUM IN SUPPORT OF
THIRD-PARTY DEFENDANT INTERVET INTERNATIONAL B.V.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**</u>

     1.     I am an associate at the law firm of Kenyon & Kenyon LLP located at One

Broadway, New York, NY 10004.  Kenyon & Kenyon is counsel for Third Party

Defendant Intervet International B.V. in the above-captioned matter.

1

2.      I submit this declaration in support of Plaintiff Intervet's Reply Memorandum In Support Of Third-Party Defendant Intervet International B.V.'S Motion To Dismiss For Lack Of Personal Jurisdiction, filed concurrently herewith.

3.      Attached as Exhibit A is a true and correct copy of the Declaration of Marcus van Heumen.

4.      Attached as Exhibit B is a true and correct copy of the Product Label for CircumventPCV® available from intervetusa.com.

5.      Attached as Exhibit C is a true and correct copy of the domain registration for www.circumventpcv.com.

6.      Attached as Exhibit D is a true and correct copy of the product information on CircumventPCV® available from www.intervetusa.com.

7.      Attached as Exhibit E is a true and correct copy of a list of all porcine products on the website www.intervet.com.

8.      Attached as Exhibit F is a true and correct copy of the "Contact Us" page from www.intervetusa.com.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on July 24, 2008                    _____
                                             Anne Elise Herold Li, Esq.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERVET INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:07-CV-559 |
| | ) | |
| MERIAL LIMITED and MERIAL SAS | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| MERIAL LIMITED and MERIAL SAS | ) | |
| | ) | |
| *Counterclaim Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERVET INC., | ) | |
| | ) | |
| *Counterclaim Defendant.,* | ) | |
| | ) | |
| MERIAL LIMITED and MERIAL SAS, | ) | |
| | ) | |
| *Third-Party Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERVET INTERNATIONAL B.V., | ) | |
| | ) | |
| *Third-Party Defendant.* | ) | |

## **DECLARATION OF MARCUS JOSEPHA MARIA VAN HEUMEN**

Marcus Josepha Maria van Heumen, being first duly sworn, declares and
says:

1.    I am a resident of The Netherlands and the Executive Director
Legal Affairs of defendant Intervet International BV.  I make this declaration based on

my personal knowledge and investigation in support of Intervet International BV's motion to dismiss Merial Limited's and Merial SAS' Third Party Complaint for lack of personal jurisdiction.

2.      Intervet International BV is a corporation organized and existing under the laws of The Netherlands with its principal place of business in Boxmeer, The Netherlands. Intervet International BV does not have any corporate office in the United States.

3.      Intervet International BV is in the business of manufacturing and selling veterinary products. Intervet International BV does not manufacture, sell or distribute any product related to this lawsuit in the United States.

4.      Intervet International BV's operations are headed by a Board of Directors with six members, which have responsibility for overall management of the company.

5.      Intervet International BV is not licensed to do business in the District of Columbia or the United States, and does not sell products, transact or solicit any business in the District of Columbia. Intervet International BV has no plants, offices, property, bank accounts, telephone listings, post office boxes, employees or agents in the District of Columbia or the United States.

6.      Intervet Inc. is a Delaware corporation, headquartered in Delaware. It is a wholly-owned, indirect subsidiary of Schering-Plough Corporation.

2

7.      Intervet International BV and Intervet Inc. are separate, distinct corporations which observe all formalities of separate corporations. Intervet Inc. has its own officers and duly elected Board of Directors. Intervet International BV and Intervet Inc. do not have any common officers or directors. Intervet International BV and Intervet Inc. maintain separate records, including, without limitation, by-laws, minutes, and financial and accounting books and records. Intervet International BV and Intervet Inc. have separate financial audits, maintain separate bank accounts, file their own tax returns, and have separate payrolls. Intervet International BV does not control the day-to-day operational decisions of Intervet Inc. Intervet International BV and Intervet Inc. enter into and perform their own contracts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2008

M J M van Heumen

# Exhibit B

# INTERVET/SCHERING-PLOUGH ANIMAL HEALTH
# (formerly Intervet Inc.)

**29160 INTERVET LANE, P.O. BOX 318, MILLSBORO, DE, 19966-0318**

| | |
|---|---|
| Toll-Free: | 800-992-8051 |
| Customer Service: | 800-441-8272 |
| Website: | www.intervetusa.com |
| Email: | Information.USA@intervet.com |

 Every effort has been made to ensure the accuracy of the information published. However, it remains the responsibility of the readers to familiarize themselves with the product information contained on the product label or package insert.

## CIRCUMVENT™ PCV

### *Intervet*

**Porcine Circovirus Vaccine, Type 2**, Killed Baculovirus Vector

For use in healthy swine, 3 weeks of age or older, as an aid in the prevention of viremia and virus shedding caused by porcine circovirus type 2.

**DOSE:** Shake well. Inject a 2.0 mL dose intramuscularly into healthy pigs, 3 weeks of age or older, using aseptic technique. Inject a 2.0 mL booster dose 3 weeks later. Animals retained for breeding purposes should be given a booster dose semiannually.

**CAUTIONS:** Store refrigerated at 35°-45°F (2°-7°C). Do not freeze. Use entire contents when first opened; do not save partial contents. Burn the containers and all unused product. Use only in healthy swine. Do not vaccinate within 21 days of slaughter. Local injection reactions may occur. If allergic reaction occurs, treat with epinephrine. Contains gentamicin and thimerosal as preservatives.

**FOR VETERINARY USE ONLY**

**INTERVET INC.,** Millsboro, DE 19966

www.intervetusa.com

1-800-441-8272

U.S. Veterinary License No. 286

| | | Code | |
|---|---|---|---|
| 50 doses | 100 mL | 070850 | 02135002 |
| 250 doses | 500 mL | 050477 | 021325002 |

**NAC No.:** 11063351

# Exhibit C

**Network Solutions.**

Call us 1-800-333-7680 (U.S. Only)

Login | Help

Shopping Cart

## WHOIS Search Results

Available **circumventpcv** extensions:

| .us | .mobi | .info | .biz | .de | .tv | .co.uk | .eu | .bz |
|-----|-------|-------|------|-----|-----|--------|-----|-----|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Order Selected Domain(s)** ➤

### Your WHOIS Search Results

IMAGE NOT AVAILABLE

**circumventpcv.com**

Make an instant, anonymous offer to the current domain registrant. Learn More

**Make an offer to buy this domain** ➤

The data contained in GoDaddy.com, Inc.'s Whols database, while believed by the company to be reliable, is provided "as is" with no guarantee or warranties regarding its accuracy.  This information is provided for the sole purpose of assisting you in obtaining information about domain name registration records. Any use of this data for any other purpose is expressly forbidden without the prior written permission of GoDaddy.com, Inc.  By submitting an inquiry, you agree to these terms of usage and limitations of warranty.  In particular, you agree not to use this data to allow, enable, or otherwise make possible, dissemination or collection of this data, in part or in its entirety, for any purpose, such as the transmission of unsolicited advertising and and solicitations of any kind, including spam.  You further agree not to use this data to enable high volume, automated or robotic electronic processes designed to collect or compile this data for any purpose, including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified in the "registrant" field.  In most cases, GoDaddy.com, Inc. is not the registrant of domain names listed in this database.

Registrant:
  Osborn Barr Communications
  One north Brentwood
  Eighth Floor
  St. Louis, Missouri 63105
  United States

  Registered through: GoDaddy.com, Inc. (http://www.godaddy.com)
  Domain Name: CIRCUMVENTPCV.COM
    Created on: 11-Dec-07
    Expires on: 11-Dec-09
    Last Updated on: 29-Apr-08

  Administrative Contact:
    Williams, Susan  stewards@osborn-barr.com
    Osborn Barr Communications
    One north Brentwood
    Eighth Floor
    St. Louis, Missouri 63105
    United States
    (314) 726-5511   Fax --

  Technical Contact:
    Williams, Susan  stewards@osborn-barr.com

When you register a domain name, current policies require that the contact information for your domain name registration be included in a public database known as WHOIS. To learn about actions you can take to protect your WHOIS information visit www.internetprivacyadvocate.org.

NOTICE AND TERMS OF USE: You are not authorized to access or query our WHOIS database through the use of high-volume, automated, electronic processes or for the purpose or purposes of using the data in any manner that violates these terms of use. The Data in Network Solutions' WHOIS database is provided by Network Solutions for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. Network Solutions does not guarantee its accuracy. By submitting a WHOIS query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via direct mail, e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to Network Solutions (or its

**NEW! VPS HOSTING**

Get the power of a dedicated server at a fraction of the cost.  **LEARN MORE** ➤

### DOMAIN OPTIONS

**Premium Names** ❓

☐ v-t-t.com
$1,588

☐ exhaustvent.com
$1,049

☐ mypocketpcgames.com

$860

☐ v-t-s.com
$5,000

☐ ventduct.com
$1,049

☐ cssv.org
$300

☐ v-s-v.com
$5,088

**Misspellings**

☐ crcumventpcv.com

☐ circmventpcv.com

☐ circumvantpcv.com

☐ circumvontpcv.com

☐ circumv3ntpcv.com

☐ circumvntpcv.com

☐ circumventpcvv.com

☐ circumventpvc.com

**Similar Names**

☐ circumvent-pc-v.com

☐ circumvantpcv.com

☐ alexandriacircumventdigitalcomputerv.com

☐ circumventmicrocomputerv.com

☐ beleaguerpcv.com

☐ circumventpersonalcomputerv.com

☐ circumventdigitalcomputerv.com

☐ assailpcv.com

**Add Domain(s) to Cart** ➤

Osborn Barr Communications
One north Brentwood
Eighth Floor
St. Louis, Missouri 63105
United States
(314) 726-5511     Fax --

Domain servers in listed order:
DNS1.INTERVET.COM
DNS2.INTERVET.COM
DNS3.INTERVET.COM

The previous information has been obtained either directly from the registrant or a registrar of the domain name
other than Network Solutions. Network Solutions, therefore, does not guarantee its accuracy or completeness.

Show underlying registry data for this record

| | |
|---|---|
| **Current Registrar:** | GODADDY.COM, INC. |
| **IP Address:** | 67.59.171.61 (ARIN & RIPE IP search) |
| **IP Location:** | US(UNITED STATES)-DELAWARE-MILLSBORO |
| **Record Type:** | Domain Name |
| **Server Type:** | IIS 6 |
| **Lock Status:** | ok |
| **Web Site Status:** | Parked |
| **DMOZ** | no listings |
| **Y! Directory:** | see listings |
| **Secure:** | No |
| **E-commerce:** | No |
| **Traffic Ranking:** | Not available |
| **Data as of:** | 14-Jun-2005 |



**Need to get your business online?**
Our professional designers can build a custom Web site for your business.
$11.95/month, plus a $499.00 design fee


**PerformanceClicks™ from Network Solutions**
Create and manage your pay per click advertising from as low as $125/month plus $99 one time set-up fee



SEARCH AGAIN

Enter a search term:

e.g. networksolutions.com

Search by:
◉ **Domain Name**
○ **IP Address**

Search ⋙

**SOLUTIONS TO GET ONLINE**

**SOLUTIONS TO SELL ONLINE**

**SOLUTIONS TO GET CUSTOMERS**

**SOLUTIONS FOR ONLINE SECURITY**

**SOLUTIONS TO SAVE MONEY**

**CORPORATE INFORMATION**

**RESOURCES**

     



**100% Secure Transaction**

For your protection, this Web site is secured with the highest level of SSL Certificate encryption.

© Copyright 2008 Network Solutions. All rights reserved.

# Exhibit D

 **Intervet**
Schering-Plough Animal Health

Search ▶

About Us    Contact Us    Careers    Species    What's New?



**CIRCUMVENT PCV**

**Overview**

_____

**Therapeutic Class**
Vaccines - Specialty

# CIRCUMVENT®PCV

**Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector**

**For more information on CIRCUMVENT® PCV, please visit the product web site at: WWW.CIRCUMVENTCPV.COM.**



**Indications**
For use in healthy swine, 3 weeks of age or older, as an aid in the prevention of viremia and virus shedding caused by porcine circovirus type 2.

**Administration and Dosage**
Shake well. Inject a 2.0 mL dose intramuscularly into healthy pigs, 3 weeks of age or older, using aseptic technique. Inject a 2.0 mL booster dose 3 weeks later. Animals retained for breeding purposes should be given a booster dose semiannually.

**Storage and Caution**

Store refrigerated at 35°-45°F (2°-7°C). Do not freeze. Use entire contents when first opened; do not save partial contents. Burn the containers and all unused product. Use only in healthy swine. Do not vaccinate within 21 days of slaughter. Local injection reactions may occur. If allergic reaction occurs, treat with epinephrine. Contains gentamicin and thimerosal as preservatives.

**FOR VETERINARY USE ONLY**

**Supplied**
_Code:_ 070850
50 dose 100mL
_Code:_ 050477
250 dose 500 mL

Product Label(s) and MSDS

For more information about Intervet Products call **1-800-441-8272**.

Case 1:07-cv-00559-HHK     Document 29-6     Filed 07/24/2008     Page 3 of 4

© 2008 Intervet/Schering-Plough Animal Health

Home    Careers    Privacy    Site Map    Disclaimer

# Exhibit E



Search ▶

About Us     Species     Country Sites     Other Sites     What's New?



**Pigs**

**What's New?**

**Products**
  Vaccines
  Anti-bacterials
  Hormones
  Anti-parasitics

**Events**

**Websites**

The trademarks indicated by CAPITAL LETTERS in this publication are the property of, licensed to, promoted or distributed by Schering-Plough Corporation, its subsidiaries or related companies. As used in this publication, the terms "Schering-Plough" and the "company" refer collectively to Schering-Plough Corporation, the publicly held parent company, and its domestic and international subsidiaries, which are engaged in the discovery, development, manufacturing and marketing of pharmaceutical, animal health and consumer products worldwide.

## Vaccines



### Porcilis® M Hyo

Porcilis® M Hyo is an inactivated vaccine for active immunization of swine to protect them against *Mycoplasma hyopneumoniae* during the whole nursery and fattening period.

### Porcilis® APP

Porcilis® APP is a subunit vaccine based on the outer membrane protein (OMP) and three toxoids (APXI, APXII and APXIII) produced by *Actinobacillus pleuropneumoniae* strains. With these components the vaccines protects against nearly all serotypes of APP worldwide. The active components are suspended in Diluvac Forte.



| Product name | Product description |
|---|---|
| ARGUS SC/ST | A virulent-live *Salmonella choleraesuis* vaccine. For the immunization of swine against diseases caused by Salmonella cholaerasuis and *Salmonella typhimurium*. |
| CIRCUMVENT PCV | An inactivated vaccine containing a killed baculovirus vector carrying protective antigen against Porcine Circovirus 2 (PCV2) in Microsol Diluvac Forte® adjuvant. The vaccine is for the immunization of pigs against PCV2 infection |
| DECIVAC FMD DOE | An inactivated oil adjuvanced vaccine for the immunization of pigs, cattle, buffalo, sheep and goats against Foot and Mouth Disease (FMD). FMD strains included in the vaccine are dependent on the local situation where the vaccine is required. |
| END-FLUENCE 2 | An inactivated vaccine containing type A Swine Influenza Viruses, subtypes H1N1 and H3N2. Microsol Diluvac Forte® is the adjuvant. The vaccine is for the prevention of swine Influenza infections caused by subtypes H1N1 and H3N2 in pigs. |
| M+ RHUSIGEN | A bacterin vaccine for use as an aid in the prevention of disease and mortality associated with *Erysipelothrix rhusiopathiae* and to aid in the prevention of pneumonia caused by *Mycoplasma hyopneumoniae* infection in swine. |
| M+PAC | *Mycoplasma hyopneumoniae* bacterin. An aid in the prevention of pneumonia caused by *Mycoplasma hyopneumoniae* infection in swine. |
| MAXIVAC EXCELL3 | An inactivated virus vaccine for use in healthy pigs 5 weeks of age or older as an aid in the prevention of disease associated with swine influenza viruses H1N1 and H3N2. |
| MAXIVAC PLATINUM | An inactivated virus vaccine indicated for use in healthy pigs 5 weeks of age or older as an aid in the prevention of pneumonia caused by *Mycoplasma hyopneumoniae* and in the reduction of disease due to swine influenza virus type A, H1N1 and H3N2. |
| MYCO SILENCER ONCE | An inactivated bacterin vaccine containing *Mycoplasma hyopneumoniae* strain 11. The bacterin is adjuvanted with Microsol Diluvac Forte®. The vaccine is for the immunization of pigs against pneumonia caused by *M. hyopneumoniae* infection. |
| PARAPAC | *Haemophilus parasuis* bacterin vaccine. For use in healthy swine 9-10 days of age or older as an aid in the prevention of Glässer's disease caused by *Haemophilus parasuis*. |
| PNEU PAC | *Actinobacillus pleuropneumoniae* bacterin, Serotypes 1, 5 and 7. For the vaccination of healthy swine over four weeks of age against pneumonia caused by *Actinobacillus pleuropneumoniae* organisms. |
| PNEU PAC-ER | *Actinobacillus pleuropneumoniae*-Erysipelothrix rhusiopathiae* bacterin vaccine. For the immunization of healthy swine four weeks of age or older as an aid in the prevention of pneumonia caused by *Actinobacillus pleuropneumoniae* and erysipelas caused by *Erysipelothrix rhusiopathiae* infection in swine |
| PORCILIS AD BEGONIA | A live attenuated vaccine for the immunization of pigs against Aujeszky's disease virus infections (Pseudorabies). The vaccine based on the virus strain NIA-3(tk- and gE-). Diluvac Forte® is used as a diluent. The gE deletion allows field infections to be differentiated from vaccination responses. |
| PORCILIS APP | An inactivated vaccine for the immunization of weaner pigs as an aid to control pleuropneumonia caused by *Actinobacillus pleuropneumoniae*. The vaccine is based on the outer membrane protein (OMP) and three toxoids ApxI, ApxII and ApxIII, produced by *Actinobacillus pleuropneumoniae strains*. |
| PORCILIS AR-T | An inactivated vaccine against Atrophic Rhinitis in pigs. It contains the toxoid of *Pasteurella multocida* dermo-necrotic toxin (DNT) and inactivated *Bordetella bronchiseptica* cells, in a water-in-oil adjuvant. Protection is transferred from the vaccinated sow or gilt to the piglets by maternally derived antibodies (MDA) through the intake of colostrum. |
| PORCILIS CSF LIVE | A live vaccine for the immunization of pigs of pigs as an aid in protection against Hog Cholera (classical swine fever). The vaccine contains live attenuated classical swine fever virus strain GPE-. |
| PORCILIS ERY | An inactivated vaccine for the immunization of pigs to prevent clinical signs of Erysipelas disease caused by all relevant *Erysipelothrix rhusiopathiae* serotypes (serotype 1 and 2). The active component is *Erysipelothrix rhusiopathiae* strain M2 (serotype 2) suspended in Diluvac Forte®. |
| PORCILIS ERY & PARVO | An inactivated combination vaccine containing inactivated Porcine Parvo virus strain 014 and an inactivated lysate of *E. rhusiopathiae*, strain M2 (serotype 2), dissolved in Diluvac Forte as adjuvant. For the immunization of sows and gilts, as an aid to the control of swine erysipelas and for the protection of embryos and foetuses against PPV infection. |
| PORCILIS GLÄSSER | An inactivated vaccine for the immunization of pigs against *Haemophilus parasuis* infections the cause of Glässer's disease. The vaccine contains inactivated cells of *Haemophilus parasuis* bacteria suspended in Diluvac Forte®. |
| PORCILIS M HYO | An inactivated bacterial vaccine for the immunization of pigs to reduce pulmonary lesions caused by *Mycoplasma hyopneumoniae* infection. Contains whole cell concentrate of *Mycoplasma hyopneumoniae* strain 11 suspended in Diluvac Forte®. |
| PORCILIS PARVO | An inactivated vaccine for the immunization of sows and gilts for the protection of embryos and foetuses against Porcine Parvo Virus infection. The vaccine contains inactivated PPV strain 014. The active component is dissolved in Diluvac Forte®. |
| PORCILIS PCV | An inactivated vaccine containing a killed baculovirus vector carrying protective antigen against Porcine Circovirus 2 (PCV2) in Microsol Diluvac Forte® adjuvant. The vaccine is for the immunization of pigs |

against PCV2 infection

**PORCILIS PESTI**  An inactivated water-in-oil emulsion "marker" vaccine for the immunization of pigs to protect against Classical Swine Fever. The vaccine contains the CSFV-E2 antigen. The corresponding test kit makes it possible to differentiate between marker vaccine vaccinated and infected animals.

**PORCILIS PORCOLI**  An inactivated vaccine for the vaccination of sows and gilts to give piglets protection against neonatal enterotoxicosis caused by *E. coli* via colostrum intake. The vaccine contains *E. coli* LT toxoid and *E. coli* fimbrial antigens F4ab (K88ab), F4ac (K88ac), F5 (K99) and F6 (987 P) in a water-in-oil emulsion.

**PORCILIS PORCOLI DILUVAC FORTE**  An inactivated vaccine for the vaccination of sows and gilts to give piglets protection against neonatal enterotoxicosis caused by E. coli via colostrum intake. The vaccine contains E. coli LT toxoid and E. coli fimbrial antigens F4ab (K88ab), F4ac (K88ac), F5 (K99) and F6 (987 P) with Diluvac Forte® adjuvant.

**PORCILIS PRRS**  A live vaccine for the immunization of pigs against Porcine Reproductive and Respiratory Syndrome. The vaccine contains PRRS virus strain DV dissolved in Diluvac Forte.

**PROSYSTEM RCE**  A live vaccine for the vaccination of pregnant sows and gilts as an aid in the prevention of rotaviral diarrhea, enterotoxemia and colibacillosis in nursing piglets. Contains two major Rotavirus serotypes, four major *E. coli* pilus antigens (K88, K99, F41 and 987P) and *C. perfringens* type C toxoid.

**PROSYSTEM TREC**  A live vaccine for the vaccination of pregnant sows and gilts as an aid in the prevention of rotaviral diarrhea, TGE enterotoxemia and colibacillos infections in nursing piglets. Contains TGE, two major Rotavirus serotypes, four major E. coli pilus antigens and C. perfringens type C toxoid.

**PRV/MARKER GOLD**  Modified live virus pseudorabies vaccine. For the immunization of healthy pigs 3 days of age or older as an aid in the prevention of disease caused by pseudorabies virus, including the respiratory form of the disease.

**RHUSIGEN**  *Erysipelothrix rhusiopathiae* bacterin vaccine. For use in healthy swine at 3-4 weeks of age or older as an aid in the prevention of disease and mortality associated with *Erysipelothrix rhusiopathiae* in swine.

**SCOURMUNE**  *Escherichia coli* bacterin vaccine. For use in healthy pregnant gilts and sows to aid in the prevention of neonatal pig diarrhea caused by *E. coli* expressing pili types K88, K99, 987P and Type 1.

**SCOURMUNE-C**  *Clostridium perfringens* Type C-*Escherichia coli* bacterin-toxoid vaccine. For use in healthy pregnant gilts and sows to aid in the prevention of colibacillosis caused by *E. coli* expressing pili types K88, K99, 987P and Type 1 and enterotoxemia caused by *C. perfringens* Type C.

**SS PAC**  *Streptococcus suis* bacterin vaccine. For vaccination of healthy pigs to aid in the prevention of meningitis, arthritis, pneumonia and septicemia caused by *Streptococcus suis* Serotype 2.

© 2008 Intervet/Schering-Plough Animal Health

Search    Careers    Media    Disclaimer    Sitemap    Privacy policy

# Exhibit F



Search ▶

About Us    Contact Us    Careers    Species    What's New?

## Contact Us

**If you would like to have more information on any of the subjects on the Intervet web-site, please fill in the form below.**

(Fields marked with "*" are mandatory)

**Personal Information**

Last Name: *

First Name / Initial(s): *

E-Mail Address: *

Phone number:

**Address Information**

Address: *

City: *

Zip Code: *

State: *    -- choose one --

**Your message**

Subject: *    -- choose one --

Question or Comment: *

[ Send E-mail ]

## For Immediate Assistance

Do you need to contact Intervet immediately?

Please call 1-800-441-8272 to reach a Customer Relation Agent.
Support is available at that number from 8:00 AM ET to 5:00 PM ET.

© 2008 Intervet/Schering-Plough Animal Health

Home     Careers     Privacy     Site Map     Disclaimer